# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO.:

KROMA MAKEUP EU, LLC, a United
Kingdom Limited Liability Company,

   U 14-CV-1551-0CL-40GJL

      Plaintiff,

vs.

BOLDFACE LICENSING + BRANDING, INC.,
a Nevada Corporation, KIM KARDASHIAN, a
California resident, KOURTNEY KARDASHIAN, a
California Resident, and KHLOE KARDASHIAN,
a California Resident, and BY LEE TILLETT, INC.,
a Florida Corporation,

      Defendants.

_____/

## COMPLAINT

   Plaintiff, KROMA MAKEUP EU, LLC, sues Defendants, BOLDFACE LICENSING +

BRANDING, INC., KIMBERLY KARDASHIAN, KOURTNEY KARDASHIAN, KHLOE

KARDASHIAN, and BY LEE TILLETT, INC., and alleges:

### JURISDICTION AND VENUE

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because the matter in
   controversy grossly exceeds the jurisdictional minimum required to confer such jurisdiction
   (exclusive of interest and costs) and Plaintiff is a citizen of a state which is different from the
   state of citizenship of each of the defendants. This Court has further jurisdiction pursuant to
   28 U.S.C. §1332, over claims alleging violation of 15 U.S.C. §1114, *et. seq.*

2. Venue lies in the Middle District of Florida pursuant to 28 U.S.C. §1391(a)-(c).

## PARTIES

3. Plaintiff, KROMA MAKEUP EU, LTD. ("KROMA EU") was and is at all material times a corporation formed and existing pursuant to the laws of the United Kingdom and based in the United Kingdom.

4. Defendant, BY LEE TILLETT, INC. ("TILLETT"), was and is at all times material hereto a Florida corporation authorized to do, and doing, business in Orange County, Florida.

5. Defendant, BOLDFACE LICENSING + BRANDING, INC. ("BOLDFACE"), was and is at all times material hereto a Nevada Corporation, headquartered in Los Angeles County, California.

6. Defendant, KIMBERLY KARDASHIAN (sometimes referred to herein as "KIM" or "KIM KARDASHIAN"), was and is at all times material hereto a California resident, residing in Los Angeles County, California.

7. Defendant, KOURTNEY KARDASHIAN (sometimes referred to herein as "KOURTNEY"), was and is at all times material hereto a California resident, residing in Los Angeles County, California.

8. Defendant, KHLOE KARDASHIAN (sometimes referred to herein as "KHLOE"), was and is at all times material hereto a California resident, residing in Los Angeles County, California.

## BACKGROUND

### a. KROMA EU is Founded and Grows Quickly

9. TILLETT is a cosmetics company founded by Aglaia Lee Tillett. TILLETT has used the name Kroma® in association with cosmetic products since approximately 2004. Kroma® cosmetics are known for using all natural ingredients, and Kroma® is a "high end" makeup brand, with products ranging in retail price from $19 to $100. Kroma® cosmetics have been

featured at the "Oscars," the "Emmys," in high profile fashion and entertainment events throughout the world, and in other nationally televised shows and events.

10. In September 2010, TILLETT and Jay Willey Ltd., which was owned and operated by KROMA EU's principal (Jeannette "Jay" Willey), entered into an agreement whereby Jay Willey Ltd. had the sole and exclusive right to sell and distribute Kroma® products within the European Union, including the United Kingdom (Jay Willey is referred to herein as "WILLEY").

11. Pursuant to the terms of their agreement, Jay Willey, Ltd. was the "unique exclusive and sole distributor and importer" of Kroma® products into the EU and UK. TILLETT guarantied ownership rights over the Kroma® mark, agreed to hold Jay Willey, Ltd. harmless against any disputes relating to ownership of the mark, and was responsible for providing Jay Willey, Ltd. with certificates evidencing registration of the Kroma® mark in the UK.

12. After expiration of their initial distributorship agreement (in October 2012), TILLETT and KROMA EU (owned by WILLEY) entered into a new agreement, containing materially identical terms.

13. After entering into the initial agreement with TILLETT, WILLEY immediately went to work selling Kroma® in the EU. By October 2010, orders were being filled and the business was beginning to boom. On information and belief, in calendar years 2011 and 2012, WILLEY's companies sold more Kroma® in the UK than TILLETT did in the US – notwithstanding TILLETT's six year "head start."

14. By later 2012, KROMA EU's business was highly promising. KROMA EU had entered into negotiations with Selfridges, Debenhams, and other upscale British retailers, all of which showed significant interest in carrying Kroma® cosmetics. In fact, TILLETT's owner (A. Lee Tillett) has testified that TILLETT intended to use success achieved by WILLEY as

leverage to secure distribution with large US retailers. As such, by late 2012, TILLET was intending to grow its American business by leveraging the successes of KROMA EU in the UK.

### b. BOLDFACE and the KARDASHIANS Hijack the Trademark

15. In or around May 2010, TILLETT attempted (unsuccessfully) to gain placement of Kroma® products on a television show produced by KIM KARDASHIAN, called The Spin Room; TILLETT engaged in discussions with a company called TLK Fusion, which acted as agent for KIM KARDASHIAN relative to product placement on the show.

16. TILLETT and TLK Fusion had multiple conversations aimed at aligning the Kroma® brand with KIM KARDASHIAN during certain public appearances. During this time period, TLK Fusion requested that TILLETT send KIM KARDASHIAN a basket of Kroma® products; thereafter, a basket of Kroma® products was in fact sent to KIM KARDASHIAN.

17. In 2011, a licensing agent for KIM KARDASIAN, KOURTNEY KARDASHIAN, and KHLOE KARDASHIAN (collectively referred to herein as the "KARDASHIANS") approached various companies about partnering to create a Kardashian makeup line.

18. In 2012, the principals of BOLDFACE were chosen for this partnership. The principals of BOLDFACE were selected because the KARDASHIANS felt the selected individuals could "represent their vision."

19. BOLDFACE was then formed to create and market a Kardashian makeup line; on May 9, 2012, BOLDFACE officially entered into a licensing agreement with the KARDASHIANS for the creation and development of the line.[1]

---

[1] The Kardashian Sisters acted through corporate entities; specifically, Kimsaprincess Inc. (KIM KARDASHIAN), 2Die4Kourt, Inc. (KOURTNEY KARDASHIAN), and Khlomoney Inc. (KHLOE KARDASHIAN). These entities have not been named as defendants inasmuch as the

20. The licensing agreement provides that the KARDASHIANS will obtain a percentage of sales (wholesale) as a licensing fee. The KARDASHIANS also obtained a substantial number of shares in BOLDFACE. BOLDFACE initially sold no products other than Kardashian makeup, and its success or failure (as well as profits to be earned by the KARDASHIANS) hinged entirely upon the KARDASHIANS' association with, and promotion of, the BOLDFACE products.

21. On February 24, 2012, the principals of BOLDFACE (through another company) conducted a trademark search for the terms "KHROMA" and "KARDASHIAN KHROMA." Kroma® appeared as the first entry.

22. BOLDFACE nevertheless presented possible product names to the Kardashian Sisters, including "Khroma" and "Kardashian Khroma." The Kardashian Sisters' chose Khroma, and provided specific instruction that the word Kardashian should not be placed in front of the word Khroma. Indeed, the KARDASHIANS selected "Khroma" and vetoed any effort to put their own family name in front of it.[2]

23. In designing the Kroma logo, BOLDFACE was inspired by a doodle drawn by KIM KARDASHIAN. With respect to the sizing of the word "Khroma" (when placed next to the names of the Kardashian Sisters), the KARDASHIANS specified that their first names should be small, and "Khroma" should be big.[3] The KARDASHIANS personally participated

---

KARDASHIANS are personally liable for the acts and transgressions alleged herein, including those undertaken through these corporate entities.

[2] For example, Defendant KHLOE KARDASHIAN sent an email reading: "We specifically said we do NOT want Kardashian in the name AT ALL. . . . We all agreed on Khroma. Never with Kardashian in front of it").

[3] KOURTNEY HARDASHIAN e-mailed: "Khroma should be stronger than our names." KIM KARDASHIAN e-mailed: "bigger Khroma smaller names").

in selection of the product name and its appearance on packaging, and had authority to veto any element of the name or the packaging (or the products) of which they did not approve.

24. On May 30, 2012 (well before any Kardashian product launched), the KARDASHIANS' agent questioned BOLDFACE regarding ownership of the Kroma® mark, asking: "You had mentioned that you might be able to purchase it." Days later, on June 3, 2012, KHLOE KARDASHIAN sent an e-mail to the same agent, copied on all of the KARDASHIANS, as follows: "Ummm yeah... are they stupid??? We need to make sure we own the name first! What dumb [expletives]."

25. As such, it is beyond dispute that by June 2012 at the very latest  – many months before Khroma was launched –  BOLDFACE and the KARDASHIANS were (i) aware of the Kroma® mark; (ii) aware that the Kroma® mark belonged to a third party; and (iii) aware that in order to launch their product, in the words of KHLOE KARDASHIAN: "we need to make sure we own the name first."

26. In June 2012, BOLDFACE submitted applications to the USPTO for the marks "KHROMA BEAUTY BY KOURTNEY, KIM AND KHLOE" and "KARDASHIAN KHROMA," covering cosmetics – an apparent effort to gain approval for the term Khroma by surrounding it with other words.

27. Also in June 2012, TILLETT discovered (through public media) that BOLDFACE intended to market a line of cosmetics sponsored by the KARDASHIANS, using the term "Khroma."

28. Counsel for TILLETT sent a cease and desist letter to BOLDFACE, demanding a response within two weeks. Three weeks later, BOLDFACE responded, denying any infringement, and refusing to engage in further dialogue or commentary.

29. BOLDFACE and the KARDASHIANS moved ahead with their plans to use term Khroma on their cosmetics, striking deals with major national retail outlets, and launching significant publicity efforts.

30. On September 26, 2012, the USPTO responded to BOLDFACE's attempt to register BEAUTY "BY KOURTNEY, KIM AND KHLOE" and "KARDASHIAN KHROMA" by issuing a refusal to allow registration, proving the opinion (inter alia) that the term "Khroma" is likely to create consumer confusion with the Kroma® mark.

31. BOLDFACE and the KARDASHIANS moved forward, unabated.

### c. TILLETT Seeks KROMA EU Damages

32. On October 26, 2012, TILLETT, through attorney Lauren Heatwole McCorvie ("MCCORVIE"), sent another cease and desist letter to BOLDFACE. BOLDFACE was by then – due to its own actions – far along in the packaging, marketing, and promotion of "Khroma" products, and it sought to negotiate a resolution.

33. TILLETT provided WILLEY every indication that her damages in the UK/EU would be sought during the negotiations.[4] MCCORVIE (acting for TILLETT) provided WILLEY with updates on settlement negotiation, marking them as "attorney/client privileged" or "confidential." On October 31, 2012, MCCORVIE sent an e-mail to WILLEY stating:

> Lee [TILLET] and Jay [WILLEY],
>
> As we get deeper into conversations with the Kardashians/Boldface's attorney and more into legal strategy, please understand that everything discussed and everything forwarded to you is *STRICTLY CONFIDENTIAL and ATTORNEY CLIENT PRIVILEGE*. Nothing can be forwarded or disclosed without prior approval by me. This is for your protection that confidential settlement negotiations are not compromised and the other side cannot attack us for any reason. [Emphasis added].

---

[4] Recall that TILLETT was contractually obligated to hold KROMA EU harmless against damages arising out of trademark infringement.

34. On November 9, 2012, MCCORVIE sent correspondence to WILLEY instructing that information regarding KROMA EU damages are critical to success in negotiating with BOLDFACE/KARDASHIANS; specifically, in an e-mail marked "confidential," MCCORVIE wrote:

> Jay . . . I need as much detail as possible because I need to be able to justify the numbers to Boldface/Kardashians' attorney . . . You're doing yourself a disservice by not giving me the breakdowns that I'm asking for . . . The better the information you give me, the better arguments and calculations I can give to the other side. I can only operate with what you give me.[5]

35. On November 20, 2014, MCCORVIE reported to WILLEY that settlement negotiations were not going well, and that BOLDFACE/KARDASHIANS "are not considering any monetary amount for the UK/EU end."[6]

36. MCCORVIE requested that WILLEY assist her in convincing BOLDFACE/KARDASHIANS to pay for the UK/EU damages, writing "it would be helpful to see your historical sales numbers (both gross and net per year and to date)." As usual, WILLEY complied.

37. On November 27, 2012, MCCORVIE wrote to WILLEY providing an update on the status of negotiations, and advising that BOLDFACE/KARDASHIAN offers were too "insultingly low" to consider continue negotiation.

38. Throughout the entire negotiation, it was made abundantly clear to WILLEY (by MCCORVIE and TILLETT), that the interests of KROMA EU were being protected; in

---

[5] It is difficult to image a clearer indication that MCCORVIE/TILLETT are protecting the interests of KROMA EU in relation to the dispute with BOLDFACE/KARDASHIANS.

[6] A clear indication that MCCORVIE had demanded money for damages incurred on the EU/UK end – damages belonging to KROMA EU alone.

reliance on those representation, WILLEY provided information, financials, and later testimony, to support TILLETT's case against BOLDFACE/KARDASHIANS.

### d. Khroma is Released into the Stream of Commerce

39. Following the breakdown of negotiation with Kroma® - and even in the absence of any agreement – BOLDFACE and the KARDASHIANS simply went ahead and released Khroma into the commerce.

40. The press release launching Khroma products asserts that the KARDASHIANS are the "creators, ambassadors and faces for Khroma," and the KARDASHIANS are quoted on their excitement in "partnering" with BOLDFACE on Khroma beauty.

41. Press releases issued by BOLDFACE are reviewed and approved by the KARDASHIANS, and the KARDASHIANS knew and approved of being held out to the public as the partners of BOLDFACE. BOLDFACE's principal has testified that "Every single aspect of [product development] has to be signed off on and approved...it's very, very detailed and strategic where all three of [the KARDASHIANS] get samples and sign off on it at every phase of the procedure... including the vessel that it comes in."

42. The KARDASHIANS commented on product logos and packaging, providing input on details. KOURTNEY KARDASHIAN has testified "it's our name and it's our brand . . ." The KARDASHIANS rejected numerous product details of which they did not approve, including colors, products, and the name Kardashian Khroma. The KARDASHIANS have demanded changes to multiple aspects of the product, and could have easily required that the product name be altered to avoid infringement or consumer confusion. As of at least June 2012, the KARDASHIANS knew that the name must be changed to avoid infringement (unless an agreement could be reached with TILLETT), but did nothing.

43. Khroma products first arrived in stores in November 2012 – the same month the negotiations broke down. As such (since arrival at stores is preceded by significant preparation), BOLDFACE and the KARDASHIANS had been moving forward before, during and after negotiations – planning to use the Khroma name (as though it were their absolute privilege to do so) irrespective of any effect on KROMA EU (or TILLETT), and irrespective of whether agreement would be negotiated with the owner of the name.

44. Sales in retail stores were driven by the KARDASHIANS personal celebrity. KHLOE KARDASHIAN has stated: "We knew that . . . retailers were going to buy because it was our product, mine and my sisters." Susan Becker, an marketing expert hired by the KARDASHIANS has opined that "Everything is designed to point to the affiliation with the Kardashian sisters. The entire marketing plan focuses again and again on the Kardashians sisters' names and likeness." Driven by the KARDASHIANS' name and image, Kroma Beauty products flooded into thousands of stores, publicized in untold media, available to hundreds of millions of consumers worldwide.

45. In the US, "Khroma" could be found at Ulta, Sears, CVS, Fred Meyer, HEB, Burlington, Walgreens, Duane Reade, and others. In the UK and EU the products could be found at John Beerens, Parfumania, Cloud 10 Beauty, World Of Beauty, Hudakutten, Brallis, Exclusive Cosmetics, and Beauty Shopaholic. The products were also sold globally through xxl-sale.co.uk, khromabeauty.eu, feelunique.com, amazon.com and drugstore.com, beauty.com, eBay, khromabeauty.com, khromabeauty.eu,[7] and others.

46. Khroma cosmetics were generally priced between $6 and $20, and were of significantly lower quality than Kroma® cosmetics – indeed, BOLDFACE specifically avoided creation

---

[7] Easily confused with kromamakeup.eu.

of a "high end" product, and targeted the mass market at low prices, believing that fans of the KARDASHIANS would be more likely to purchase at a lower price point.

47. As a result of these actions, KROMA EU suffered major instances of consumer confusion, severely impacting and effectively destroying its business.

48. As an example, KROMA EU had spent two years cultivating its relationship with the "Debenhams," an upscale British department store chain, with 172 stores in the UK, Ireland, and Denmark. Once in Debenhams, KROMA EU would be able to leverage that position into placement at other (if not all all) upscale British and European department stores.

49. The relationship with Debenhams had moved steadily forward and was extremely positive, until the moment Khroma products hit the UK, whereupon a Debenhams representative asked WILLEY why Kroma® had associated itself with the KARDASHIANS, and why Debenhams should carry a product that can be purchased at Walmart. Debenhams promptly ended its relationship with KROMA EU by e-mail, with subject line reading "Khroma Beauty."

50. KROMA EU has experienced innumerable additional instances of consumer confusion and damage to its business including customers uninterested in purchasing a product perceived as associated with the mass market, or with lower quality ingredients. Since mid-2013, almost every potential client expressed his/her understanding that the product is associated with the KARDASHIANS, requiring constant (and often unsuccessful) corrections.

51. In short, the intentional, willful, wonton decision to release Khroma into marketplace – made by BOLDFACE and the KARDASHIANS with full and complete knowledge of the pre-existing mark and knowledge of a USPTO determination that such action would cause consumer confusion (and knowledge of the necessity to negotiate permission prior to using the mark) – predictably destroyed any serious prospect of marketing or selling the much

higher-quality Kroma® cosmetic products, and put a predictable end to KROMA EU's promising and fast-growing UK and EU business prospects.

### e. BOLDFACE Sues TILLETT; TILLETT Sues BOLDFACE

52. On November 30, 2012, BOLDFACE sued TILLETT for declaratory relief, seeking a declaration that use of the name Khroma did not infringe on TILLETT's mark (the "California Case"). This was a frivolous misuse of the judicial system, transparently intended to put an aggrieved part on the defensive. BOLDFACE failed to sue or include KROMA EU within the California Case, and KROMA EU was never a party.

53. TILLETT retained the California law firm of Fayer Gipson, LLP (hereinafter "GIPSON") to respond to the BOLDFACE complaint and file counterclaims sounding in trademark violation. MCCORVIE entered an appearance in California, *pro hac vice*, on behalf of TILLETT.

54. From the outset, GIPSON sought to build TILLETT's case against BOLDFACE/KARDASHIANS, in part, by using information from KROMA EU regarding UK/EU damages, including: (i) KROMA EU's marketing, promotion, and expansion efforts; (ii) KROMA EU's lost European business opportunities; and (iii) instances in the UK wherein customers have confused the products.

55. GIPSON had KROMA EU do significant legwork, marking communications with WILLEY as "Joint Defense/Common Interest Privilege" – again bolstering WILLEY's perception that legal work on behalf of TILLETT would protecting the rights of KROMA UK (as is plainly required by TILLETT pursuant to the agreement of the parties).

56. In fact, GIPSON communication to WILLEY that damages sustained by KROMA EU were "crucial evidence" in TILLETT's case against BOLDFACE/KARDASHIANS; writing:

Can you print out a copy of the Debenhams email referred to in the declaration, scan it and forward it to me? I want to attach it to Jay's declaration. This is a crucial piece of evidence showing how KHROMA has hurt KROMA.

57. TILLETT's principal repeatedly confirmed that all of the legal work done in relation to BOLDFACE/KARDASHIANS was for the benefit of both TILLETT and KROMA EU, for example, writing: "Just to confirm Jay, all this work *we're* doing right now is for evidence is to see if *we* get a [preliminary injunction] motion . . . so I'll keep you posted." [Emphasis added].

58. On March 11, 2013, based in part on evidence provided by WILLEY, the Honorable Audrey Collins of the U.S. District Court for the Central District of California awarded preliminary injunctive relief, making numerous findings, including:

    a. Kroma® and Khroma have the same sound and meaning.

    b. As used in the marketplace, both marks appear substantially identical to the consumer, specifically:

 

    c. BOLDFACE consistently advertises and markets its product as "Khroma Beauty" not including the words "Kourtney, Kim, Khloe" within the actual name of the product.

    d. BOLDFACE includes a "TM" symbol on its product next to the word "Khroma," conveying the message that the word "Khroma" is its trademark.

e. Both Kroma and Khroma play off the word Chroma in substantially identical fashion.

f. Kroma® and Khroma products both sell cosmetics, and have several identical products, including blush, compacts, gloss, lip kits, foundation, eye shadow, and bronzer.

g. BOLDFACE's products "are not so 'clearly labeled' to dispel confusion and, because the marks are so similar, even purchasers of high-end cosmetics exercising great care in their purchasing decisions could easily be confused."

h. BOLDFACE was "unquestionably" aware of the Kroma® mark when it decided to proceed with a multi-million-dollar rollout of "Khroma" products.

59. Judge Collins determined that the nationwide rollout of Khroma products would eliminate current and future opportunities for sale of Kroma®.

60. On November 26, 2013, the KARDASHIANS moved for summary judgment as to themselves personally.

61. On April 14, 2014, Judge Collins held a hearing on the KARDASHIANS' summary judgment motion. No order was entered on the docket (only *ore tenus* at the hearing, with the result not indicated on the docket). However, by all accounts, the KARDASHIANS lost that motion. According to GIPSON's website:

> In April 2014, the court tentatively denied in relevant part the Kardashians sisters' motion to be dismissed from the case, finding that Tillett's claims against the Kardashians for vicarious trademark infringement should go to trial. Shortly thereafter, the parties reached a settlement agreement.[8]

---

[8] http://fayergipson.com/press-news

### f. **TILLETT Abandons KROMA EU**

62. In the immediate aftermath of the preliminary injunction victory, TILLETT (apparently no longer needing WILLEY to further the case), indicated for the first time that any recovery would inure only to the benefit of TILLETT, and refused any further substantive communication.

63. This was distressing to WILLEY, inasmuch as TILLET and MCCORVIE had worked very closely with WILLEY from the very outset, providing repeated assurance that UK/EU damages would be sought, and thus eliciting (time consuming) assistance from KROMA EU – assistance needed (and cited) in obtaining preliminary injunctive relief, and in thus positioning TILLETT for successful negotiation.

64. It was thus made clear that all of the promises (and hold harmless obligations) regarding the protection of KROMA EU's position through negotiation and litigation were a hollow scheme or ruse, intended to lull WILLEY and KROMA EU into proving significant assistance, evidence for litigation, and damage models – to be exploited by TILLETT, and used to the exclusion of KROMA EU.

65. On March 20, 2013, KROMA EU was forced to turn to counsel (an acquaintance in the UK) for assistance; counsel wrote to MCCORVIE:

> You will appreciate that my client has suffered considerable financial loss as a result of the Khroma launch. Your client led mine to believe that any settlement reached with Boldface/Kardashians would also include provision for my client's losses . . . Perhaps you could confirm, for the avoidance of doubt as to whether my client will receive any share of any financial settlement that may be reached with Boldface/Kardashians and if so, the proposed percentage share.

66. MCCORVIE responded: "As I'm sure you respect, I cannot disclose confidential matters as Jay is not protected by privilege."

67. MCCORVIE is a lawyer. She previously communicated with WILLEY regarding negotiations with BOLDFACE/KARDASHIANS and labeled those communications "attorney-client privileged" and "confidential." Now – relating to the exact same facts and parties – MCCORVIE refuses to communicate with WILLEY, hiding behind a claim that WILLEY "is not protected by privilege." This is an unlawful misuse of privilege as "sword and shield." This conduct is compounded by MCCORVIE's prior written confirmation that she was seeking EU/UK damages (belonging to KROMA EU) in negotiations with BOLDFACE/KARDASHIANS, and GIPSON's position that communications with WILLEY were protected by joint defense and common interest privileges.

### g. BOLDFACE/KARDASHIANS Obtain No Release from KROMA EU

68. In April 2014, the parties to the California Case filed a Notice of Settlement. BOLDFACE and the KARDASHIANS had thus reached a settlement with TILLETT.

69. From the time of the initial infringement through and including the date of settlement of the California Case, KROMA EU was the _**exclusive licensee**_ of the Kroma® trademark in the EU and UK, with the exclusive right (to the exclusion of everyone including TILLETT) to import and distribute Kroma® products within the UK and EU.

70. KROMA EU was never a party to the California Case, and the California Case was settled without any release from KROMA EU, or any satisfaction or resolution of damage claims belonging to KROMA EU, which KROMA EU now seeks in this case.

### COUNT I – BOLDFACE
### TRADEMARK INFRINGEMENT (STATUTORY)

71. PLAINTIFF re-avers and re-alleges Paragraphs 1 through 70 above, as though fully set forth herein.

72. At all times material hereto, KROMA EU was the *exclusive licensee* of the Kroma® trademark in the EU and UK, with the sole and exclusive right to import and distribute Kroma® products within the UK and EU.

73. Pursuant to 15 U.S.C. §1125(a) it was unlawful for BOLDFACE to make use of the term "Khroma" within the UK and EU.

74. BOLDFACE nevertheless intentionally made extensive use of the term Khroma in commerce, within the UK and EU, including widespread distribution.

75. BOLDFACE's misconduct was intentional, willful, wanton, and malicious. Prior to launching Khroma (and prior to importing or distributing Khroma in the EU or UK), BOLDFACE had specific actual detailed knowledge of the Kroma®, and of a USPTO opinion that its actions would create consumer confusion; BOLDFACE also had specific knowledge that Kroma® was being sold in the EU and UK, and BOLDFACE had tried (unsuccessfully) to negotiate the purchase of Kroma® mark prior to launching Khroma into commerce.

76. BOLDFACE intentionally proceeded with its international infringement, predictably confusing the consuming public and destroying the business of KROMA EU.

77. KROMA EU seeks compensatory and punitive damages to redress this willful, wanton, intentional misconduct; KROMA EU additionally seeks treble damages and attorney's fees pursuant to 15 U.S.C. §1117.

WHEREFORE, Plaintiff, KROMA MAKEUP EU, LTD., respectfully requests that this Court enter final judgment in its favor, and against Defendant, BOLDFACE LICENSING + BRANDING, INC., for compensatory, statutory, and punitive damages, attorney's fees and costs, and awarding all such additional relief as is deemed just and equitable.

17

## COUNT II – BOLDFACE
## TRADEMARK INFRINGEMENT (COMMON LAW)

78. PLAINTIFF re-avers and re-alleges Paragraphs 1 through 70 above, as though fully set forth herein.

79. BOLDFACE used the term "Khroma" in commerce in the UK and EU.

80. BOLDFACE undertook this action with actual knowledge of the Kroma® mark, and with actual knowledge that Kroma® products were distributed and sold in the EU and UK.

81. BOLDFACE was on actual notice (from the USPTO) that use of the word "Khroma" was likely to be confused with the Kroma® mark by consumers.

82. BOLDFACE only released "Khroma" branded products into the EU and UK after its unsuccessful settlement negotiations aimed at purchasing the Kroma® mark from TILLETT.

83. KROMA MAKEUP EU was at all material times an exclusive licensee, with sole exclusive rights to import and sell Kroma® products in the EU and UK.

84. As a direct and predictable consequence of BOLDFACE's action, KROMA MAKEUP EU incurred serious damages, for which BOLDFACE is liable.

85. BOLDFACE's actions as described herein were malicious, wanton, willful, and intentional.

WHEREFORE, Plaintiff, KROMA MAKEUP EU, LTD., respectfully requests that this Court enter final judgment in its favor, and against Defendant, BOLDFACE LICENSING + BRANDING, INC., for compensatory and punitive damages, and awarding all such additional relief as is deemed just and equitable.

## COUNT III – KIM KARDASHIAN
## VICARIOUS LIABILITY FOR TRADEMARK INFRINGEMENT

86. PLAINTIFF re-avers and re-alleges Paragraphs 1 through 70 above, as though fully set forth herein.

87. At all times material hereto, KIM KARDASHIAN had the right and the ability to supervise the offending activity set forth within Count I and Count II above.

88. KIM KARDASHIAN, along with her sisters, had full veto power to override decisions made by BOLDFACE relating to Khroma makeup, including but not limited to the name and packaging of product; in fact, the name was selected by Ms. Kardashian (and her sisters) from amongst options presented to them by BOLDFACE; the final decision was made by the KARDASHIANS.

89. KIM KARDASHIAN had an obvious and direct financial interest in the exploitation of the materials at issue; the licensing agreement between the KARDASHIANS and BOLDFACE provides that the KARDASHIANS will obtain a percentage of sales (wholesale) as a licensing fee. The KARDASHIANS also own a substantial number of shares in BOLDFACE itself, which at all material times had no products other than "Khroma" makeup. The KARDASHIANS held themselves out as "partners" with BOLDFACE in the Khroma venture.

90. KIM KARDASHIAN was a moving, active conscious force behind infringement; when presented with an option to dilute the infringing mark (by placing it next to the word "Kardashian"), she instructed: "bigger Khroma smaller names." As explained by KHLOE KARDASHIAN in relation to Khroma: "it's our name and it's our brand . . ." As of no later than June 2012 (well before Khroma was launched into the marketplace), KIM KARDASHIAN had specific information that the name Khroma had to be purchased prior to its use it commerce, but failed to demand any change to the name of the product prior to launch.

91. KIM KARDASHIANS actions as described hereinabove, particularly those acts and omissions undertaken after KIM KARDAHIAN has knowledge of the Kroma® mark,

constitute willful, wanton, intentional, egregious misconduct, for which KROMA MAKEUP EU seeks punitive damages.

WHEREFORE, Plaintiff, KROMA MAKEUP EU, LTD., respectfully requests that this Court enter final judgment in its favor, and against Defendant, KIMBERLY KARDASHIAN, for compensatory and punitive damages, and awarding all such additional relief as is deemed just and equitable.

## COUNT IV – KOURTNEY KARDASHIAN
## VICARIOUS LIABILITY FOR TRADEMARK INFRINGEMENT

92. PLAINTIFF re-avers and re-alleges Paragraphs 1 through 70 above, as though fully set forth herein.

93. At all times material hereto, KOURTNEY KARDASHIAN had the right and the ability to supervise the offending activity set forth in Count I and Count II, above.

94. KOURTNEY KARDASHIAN, along with her sisters, had full veto power to override major decisions relating to Khroma makeup, including but not limited to the name of the product; in fact, the name was selected by Ms. Kardashian (and her sisters) from amongst options presented to them by BOLDFACE; the final decision was made by the KARDASHIANS.

95. KOURTNEY KARDASHIAN had an obvious and direct financial interest in the exploitation of the materials at issue; the licensing agreement between the KARDASHIANS and BOLDFACE provides that the KARDASHIANS will obtain a percentage of sales (wholesale) as a licensing fee. The KARDASHIANS also own a substantial number of shares in BOLDFACE itself, which at all material times had no products other than "Khroma" makeup. The KARDASHIANS held themselves out as "partners" with BOLDFACE in the Khroma venture.

20

96. KOURTNEY KARDASHIAN was a moving, active conscious force behind infringement; AS KOURTNEY KARDASHIAN herself explained: "it's our name and it's our brand . . ." As of no later than June 2012 (well before Khroma was launched into the marketplace), KOURTNEY KARDASHIAN had specific information that the name Khroma had to be purchased prior to its use it commerce, but failed to demand any change to the name of the product prior to launch.

97. KOURTNEY KARDASHIANS actions as described hereinabove, particularly those acts and omissions undertaken after KOURTNEY KARDAHIAN has knowledge of the Kroma® mark, constitute willful, wanton, intentional, egregious misconduct, for which KROMA MAKEUP EU seeks punitive damages.

WHEREFORE, Plaintiff, KROMA MAKEUP EU, LTD., respectfully requests that this Court enter final judgment in its favor, and against Defendant, KOURTNEY KARDASHIAN, for compensatory and punitive damages, and awarding all such additional relief as is deemed just and equitable.

**COUNT V – KHLOE KARDASHIAN
VICARIOUS LIABILITY FOR TRADEMARK VIOLATIONS**

98. PLAINTIFF re-avers and re-alleges Paragraphs 1 through 70 above, as though fully set forth herein.

99. At all times material hereto, KHLOE KARDASHIAN had the right and the ability to supervise the offending activity at issue. KHLOE KARDASHIAN, along with her sisters, had full veto power to override major decisions relating to Khroma makeup, including but not limited to the name of the product; in fact, the name was selected by Ms. Kardashian (and her sisters) from amongst options presented to them by BOLDFACE; the final decision was made by the KARDASHIANS.

100. KHLOE KARDASHIAN had an obvious and direct financial interest in the exploitation of the materials at issue; the licensing agreement between the KARDASHIANS and BOLDFACE provides that the KARDASHIANS will obtain a percentage of sales (wholesale) as a licensing fee. The KARDASHIANS also own a substantial number of shares in BOLDFACE itself, which at all material times had no products other than "Khroma" makeup. The KARDASHIANS held themselves out as "partners" with BOLDFACE in the Khroma venture.

101. KHLOE KARDASHIAN was a moving, active conscious force behind infringement; when presented with an option to dilute the infringing mark. As explained by KOURTNEY KARDASHIAN in relation to Khroma: "it's our name and it's our brand . . ." As of no later than June 2012 (well before Khroma was launched into the marketplace). Furthermore, KHLOE KARDASHIAN had specific knowledge that the name Khroma had to be purchased prior to its use it commerce, but never exercised her right to demand changes to the name of the product.

102. KHLOE KARDASHIANS' actions as described hereinabove, particularly those acts and omissions undertaken after KHLOE KARDAHIAN had knowledge of the Kroma® mark, constitute willful, wanton, intentional, egregious misconduct, for which KROMA MAKEUP EU seeks punitive damages.

WHEREFORE, Plaintiff, KROMA MAKEUP EU, LTD., respectfully requests that this Court enter final judgment in its favor, and against Defendant, KHLOE KARDASHIAN, for compensatory and punitive damages, and awarding all such additional relief as is deemed just and equitable.

## COUNT VI – BY LEE TILLETT
## PROMISSORY ESTOPPEL

103.   PLAINTIFF re-avers and re-alleges Paragraphs 1 through 70 above, as though fully set forth herein.

104.   TILLETT repeatedly represented and promised that all damages incurred in the UK/EU were sought in negotiation and litigation pursued in California against BOLDFACE and the KARDASHIANS.

105.   MCCORVIE specifically represented that KROMA EU damages were being sought in negotiations with BOLDFACE/KARDASHIANS. GIPSON specifically stated that KROMA EU damages were crucial evidence in TILLETT's case.

106.   This promise and these statements appeared to comply with TILLETT's obligation to hold KROMA EU harmless against trademark infringement, and was supported by repeated communications from MCCORVIE sharing confidential settlement negotiation details with WILLEY, and going so far as to label those communications attorney-client privileged and confidential.

107.   WILLEY/KROMA EU was specifically and clearly made to understand that any negotiation did, and would, pursue damages belonging exclusively to KROMA EU (which TILLETT never had standing to pursue). In justifiable reliance upon the statements of TILLETT and her lawyers, WILLEY was induced to provide information, financials, accounting data, evidence, and testimony in furtherance of the California Case, inasmuch as WILLEY had been promised her just percentage within any negotiated settlement.

108.   After obtaining all needed information from WILLEY (and obtaining a preliminary injunction based, in part, on that information), TILLETT (on her own and through counsel) refused to continue to seek damages on behalf of KROMA EU and refused any further

communication with WILLEY, using privileges as both sword and shield (as set forth more fully above).

109.   Upon information and belief, TILLETT's settlement with BOLDFACE/KARDASHIANS includes purported settlement and release of all claims, including any claims arising out of damages incurred in the EU/UK; however, TILLETT never had standing to assert (or compromise) any such claims, and any consideration accepted in exchange for purported settlement of such claims is the exclusive property of KROMA EU.

110.   TILLETT is estopped by her conduct from obtaining any benefit or consideration from BOLDFACE/KARDASHIANS attributable to damages incurred in the UK/EU and then failing to remit all such funds to KROMA EU, which will credit such funds as a setoff against total damages (compensatory and punitive) owed to KROMA EU by BOLDFACE and the KARDASHIANS in this case.

111.   The actions undertaken by TILLET as described herein (including actions taken through counsel) are willful, wanton, and intentionally calculated to use and deceive KROMA EU, and to thus usurp damages to which only KROMA EU had any legal right; to these extent these actions were undertaken by counsel for TILLETT, TILLETT is nevertheless answerable for the conduct of its counsel

WHEREFORE, Plaintiff, KROMA MAKEUP EU, LTD., respectfully requests that this Court enter final judgment in its favor, and against Defendant, BY LEE TILLETT, Inc., for compensatory and punitive damages, and awarding all such additional relief as is deemed just and equitable.

## COUNT VII – BOLDFACE
## TORTIOUS INTERFERENCE

112.   PLAINTIFF re-avers and re-alleges Paragraphs 1 through 70 above, as though fully set forth herein.

113.   At all times material hereto, KROMA EU had an advantageous business relationship with TILLETT, whereby KROMA EU had the sole and exclusive right to import and distribute Kroma® cosmetics in the UK and EU.

114.   As of November 2012 (at the very latest), BOLDFACE was aware that TILLETT had a distributor for Kroma® products in the EU/UK, and BOLDFACE was engaged in negotiations aimed at resolving certain damages, including those to be sustained in the EU and UK once Khroma launched in those areas.

115.   After the collapse of its negotiations with TILLETT, BOLDFACE intentionally released "Khroma" branded products into the EU and UK, thus interfering with, and eviscerating, any advantage or value held by KROMA EU in relation to its exclusive distributorship of Kroma® products in those areas.

116.   As a consequence of these actions, KROMA EU sustained serious damages, for which BOLDFACE is liable.

117.   BOLDFACE's actions as described herein were malicious, wanton, willful, and intentional, and taken with careless disregard for the rights and business of KROMA EU.

WHEREFORE, Plaintiff, KROMA MAKEUP EU, LTD., respectfully requests that this Court enter final judgment in its favor, and against Defendant, BOLDFACE LICENSING + BRANDING, INC., for compensatory and punitive damages, and awarding all such additional relief as is deemed just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues presented in this case.

DATED: September 23, 2014.

Respectfully Submitted,

**LAW OFFICES OF NOLAN KLEIN, P.A.**
*Co-counsel for Plaintiff*
Wells Fargo Tower – Suite 1500
One East Broward Blvd.
Ft. Lauderdale, Florida 33301
PH:   (954)745-0588
*klein@nklegal.com*
*nina@nklegal.com*
*amy@nklegal.com*

By:  */s/ Nolan K. Klein*
NOLAN K. KLEIN
Florida Bar No. 647977

*~ and ~*

**BECK & LEE TRIAL LAWYERS**
*Co-counsel for Plaintiff*
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
PH:   (305) 234-2060
FAX:   (786) 664-3334
JARED H. BECK
Florida Bar No. 20695
ELIZABETH LEE BECK
Florida Bar No. 20697
*jared@beckandlee.com*
*elizabeth@beckandlee.com*