IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:14-cv-01551

KROMA MAKEUP EU, LLC, a United
Kingdom Limited Liability Company,

                    Plaintiff,

vs.

BOLDFACE LICENSING + BRANDING,
INC.,  a Nevada Corporation, KIM
KARDASHIAN, a California resident,
KOURTNEY KARDASHIAN, a
California Resident, and KHLOE
KARDASHIAN, a California Resident, and BY
LEE TILLETT, INC., a Florida Corporation,

                    Defendants.

_____

**PLAINTIFF KROMA MAKEUP EU, LLC'S RESPONSE IN OPPOSITION TO
KARDASHIAN DEFENDANTS' MOTION TO COMPEL ARBITRATION AND
STAY ACTION AS TO COUNTS III, IV, AND V OF THE COMPLAINT**

       Plaintiff, KROMA MAKEUP EU, LLC ("Plaintiff" or "Kroma EU"), by and through

undersigned counsel, hereby files its Response in Opposition to Defendants, Kim Kardashian,

Kourtney Kardashian, and Khloe Kardashian's Motion to Compel Arbitration and Stay Action

as to Counts III, IV and V of the Complaint:

1

## MEMORANDUM OF LAW

### Introduction

Dissatisfied with this Court's ruling on their motion to dismiss, and unwilling to produce anything in discovery, the Kardashians[1] now shift gears, seeking to compel arbitration on the basis of a contract to which they are not parties, and which does not concern them (or anyone with whom they are associated). Apparently cognizant that the contract at issue provides no basis by which they can compel arbitration directly, they attempt to invoke "equitable estoppel" – an entirely discretionary doctrine, providing a limited exception to the general rule that non-signatories may not enforce arbitration agreements. But their equitable estoppel arguments rest on an incorrect understanding and application of the doctrine, as well as an untenable reading of the contract's plain language.

Their meritless motion is brought nearly eight months after this lawsuit was filed, after full litigation of the various motions to dismiss, after the Kardashians propounded written discovery, and after they signed off on a Case Management Report affirmatively representing to this Court they do not agree to arbitrate the case. Worse, their argument relies, in part, upon a demonstrably false representation (within a Declaration submitted by their counsel) that they did not receive the contract containing the arbitration clause until May 7, 2015, when in fact it was provided much earlier, within Plaintiff's Initial Rule 26 Disclosures. For the reasons set forth in detail below, Plaintiff respectfully requests that this Court deny the Kardashians' Motion to Compel Arbitration and to Stay Action as to Counts III, IV, and V of the Complaint.

---

[1]     "Kardashians" or "Kardashian Defendants" refers collectively to Defendants Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian.

## Relevant Background

The general facts of this case are set forth in the Court's Order of April 15, 2015 [D.E. 52].  The following facts are particularly relevant to the motion before the Court.

Plaintiff filed its Complaint on September 24, 2014 [D.E. 1].  The Complaint sets forth a claim for trademark infringement against each Kardashian Defendant (Counts III through V).

On January 21, 2015, the Kardashian Defendants filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1) or Alternatively, for Failure to State a Claim, Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss") [D.E. 33].

On February 13, 2015, counsel for Plaintiff, the Kardashians, and Tillett held a case management conference by telephone.  There was no indication that any party intended to file or was otherwise contemplating a motion to compel arbitration.  On February 27, 2015, the parties jointly filed a Case Management Report ("CMR") [D.E. 44] in which they marked "no" in response to the question, "Do the parties agree to arbitrate?"  CMR at pp. 8-9.

On March 20, 2015, Plaintiff's counsel served Initial Rule 26(a) Disclosures producing the licensing agreement between Plaintiff and Tillett, among a number of other documents, on all Defendants.  *See* **Exhibit 1**.

On April 15, 2015, the Court issued an Order [D.E. 52] in which it denied the Kardashians' Motion to Dismiss.[2]

On April 24, 2015, Defendant Kourtney Kardashian propounded written interrogatories, requests for admission, and requests for production on Plaintiff.  *See* **Composite Exhibit 2**.

---

[2]     The same Order denied Tillett's motion to dismiss, which had been filed November 17, 2014.

On May 7, 2015, the Kardashians filed their Answer [D.E. 53].  The same day, Plaintiff received an email from the Kardashians' lawyer, Michael J. Kump, indicating that the Kardashians would be filing a motion to compel arbitration.  *See* **Exhibit 3**.  This was the first indication from the Kardashians they would be seeking to arbitrate this case.  The next day, Plaintiff received a notice purporting to "withdraw" the discovery requests.  *See* **Exhibit 4**.

On May 13, 2015, the Kardashians filed their Motion to Compel Arbitration and Stay Action as to Counts III, IV and V of the Complaint ("Motion") [D.E. 56].  Accompanying the Motion was the Declaration of Michael J. Kump ("Kump Declaration" or "Kump Decl.") [D.E. 561], in which Kump testifies under penalty of perjury that, "[t]he Complaint filed by Kroma EU (Dkt. 1) did not attach the License Agreement or disclose that there is an arbitration clause in the License Agreement.  As of May 7, 2015, no documents had been produced in discovery in this action."  Kump Decl. ¶ 6.

### Legal Standard

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U .S.C. § 2.  Section 3 of the FAA requires that a court, upon motion by a party to an action in federal court, stay the action if it involves an "issue referable to arbitration under an agreement in writing."  9 U.S.C. § 3.  "These provisions manifest a 'liberal federal policy favoring arbitration agreements.' " *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Therefore, 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations.' " *MS Dealer*

*Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) (quoting *Moses H. Cone*, 460 U.S. at 24).

"Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id. See also Morewitz v. W. of England Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1364 (11th Cir. 1995) (federal law "does not require parties to arbitrate when they have not agreed to do so. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (citing *Volt Info Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation[.]" *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "The existence of an arbitration clause in a contract does not create a presumption that both parties intended all disputes arising out of the contract to be referable to arbitration." *In re Taylor*, 260 B.R. 548, 563 (Bankr. M.D. Fla. 2000). To determine whether an arbitration clause requires arbitration of a given action, the Court must look first and foremost to "the plain language of the contract." *Id*.

While the FAA applies to arbitration agreements, "state law generally governs whether an enforceable contract or agreement to arbitrate exists." *Turner v. U-Haul Co. of Fla. 905, LLC*, 2008 WL 709107, *2 (M.D. Fla. Mar. 14, 2008) (citations and quotation marks omitted). "[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Id*. The relevant inquiry in Florida is: "(1) whether a valid written agreement to arbitrate exists; (2) whether an

arbitrable issue exists; and (3) whether the right to arbitration was waived." *Id.* (citation and quotation marks omitted).

**<u>Analysis</u>**

**The Kardashians May Not Compel Arbitration Based On The Arbitration Agreement Between Plaintiff And Tillett**

The Kardashians seek an order compelling arbitration based entirely on an arbitration provision in the license agreement between Plaintiff and Tillett, which is titled Exclusive Import Contract ("EIC")[3]– a document that does not mention or otherwise concern the Kardashians, and was not signed by them.  There are at least four distinct and fatal problems with this position.

<u>First</u>, the trademark claims against the Kardashians are not arbitrable issues because the plain language in the arbitration clause does not encompass them.

<u>Second</u>, even if the trademark claims were arbitrable, the Kardashians, as non-signatories to the EIC, cannot compel arbitration.  Equitable estoppel – the discretionary doctrine upon which they rely – does not apply here because there are no allegations of interdependent and concerted misconduct by the Kardashians and Tillett, and the trademark claims against the Kardashians do not arise out of any obligations under the EIC.

<u>Third</u>, the Kardashians have waived any right to compel arbitration given the late timing of the motion and their conduct in the litigation thus far.

<u>Fourth</u>, whether or not to apply equitable estoppel – a limited exception to the prevailing rule that arbitration agreements may only be enforced between the signatories – is

---

[3]     The agreement is attached as Exhibit A to the Declaration of Michael J. Kump [D.E. 56-1].

firmly within the Court's discretion and subject to equitable principles.  It would be an improper exercise of discretion for the Court to compel arbitration given the blatant misrepresentations made with the Kardashians' motion.

**I.     Plaintiff's Trademark Infringement Claims Against The Kardashians Are Not Arbitrable Under The EIC's Arbitration Clause**

The EIC is a contract between Tillett as "Supplier" and Plaintiff as "Importer" in connection with the importation and distribution of Kroma within Europe.[4]  As set forth in the agreement, "[t]he aim of the present Contract is to grant the Importer the status of the unique exclusive sole importer and distributor of the Goods of the Supplier in the Territory and for the period, stipulated in the Contract."  EIC ¶ 1.1 (emphasis removed).  It goes on to specify that, "[t]his Contract regulates the legal relationships between the Supplier and the Importer concerning the terms and conditions of the Goods' delivery (supply) and the legal relationship concerning the status and the rights of the Importer to sell the purchased Goods in the specified Territory."  *Id.* ¶ 1.2.  Paragraphs 16.3 and 16.4 set forth the provision at issue:

> 16.3.    In case of any difficulty arising from the validity, interpretation, termination or performance of this Contract, or from the preceding agreement between the Parties, the Parties should make all efforts to seek an amicable solution.

> 16.4.    If it is impossible to settle the disputes peacefully, the Parties agree that the disputes arising between them concerning the validity, interpretation, termination or performance of the present Contract, should be considered independent arbitration in the State of Florida, United States.[5]

---

[4]     The agreement attached to the Kump Declaration is actually between Tillett and Jay Willey Limited.  As set forth in the Complaint, after this agreement expired, Tillett entered into a new agreement, containing materially identical terms, with Plaintiff in October 2012.  *See* Compl. ¶ 12.  A copy of this agreement was appended to Plaintiff's Initial Rule 26(a) Disclosures.  *See* **Exhibit 1** at pp. 34-49.

[5]     Note that the arbitration clause does not specify where in Florida arbitration is to be conducted, or by which rules, or by how many arbitrators – all serious issues in their own right.

EIC ¶¶ 16.3, 16.4.

As a threshold matter, in order for the claims against the Kardashians to be compelled to arbitration, they must be arbitrable under the terms of the of the EIC.   "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'"  *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  "In order for a claim to be submitted to arbitration, 'it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself' and there must be some nexus between the claim and the contract containing the arbitration clause."  *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. 3d DCA 2010) (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)).  "[N]ot every dispute that arises between contracting parties will be subject to arbitration, nor is the mere fact that a dispute would not have arisen but for the contract sufficient to compel arbitration of the dispute."  *Kolsky*, 28 So. 3d at 968-69 (quoting *Roth v. Cohen*, 941 So. 2d 496, 499 (Fla. 3d DCA 2006)).  *See also Morewitz v. W. of England Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1364 (11th Cir. 1995) (federal law "does not require parties to arbitrate when they have not agreed to do so.  It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (citing *Volt Info Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

"The existence of an arbitration clause in a contract does not create a presumption that both parties intended **all** disputes arising out of the contract to be referable to arbitration." *In re Taylor*, 260 B.R. 548, 563 (Bankr. M.D. Fla. 2000) (citing *Morewitz*, 62 F.3d at 1362)

(emphasis added).  To determine whether an arbitration clause requires arbitration of a given claim, the Court must look first to "the plain language of the contract."  *Id*.  "Where no ambiguity exists in an agreement to arbitrate, the language of the contract defines the scope of disputes subject to arbitration."  *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 313 F.3d 1349, 1358 (11th Cir. 2002) (quotation marks omitted) (quoting *Equal Emp. Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 762-64 (2002) ("While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.")).

Here, by its plain terms, the arbitration provision applies only to disputes "between the Parties" which "concern[] the validity, interpretation, termination or performance of" the Exclusive Import Contract, *i.e.* the licensing agreement between Plaintiff and Tillett.  EIC ¶ 16.4.  This is the universe of arbitrable disputes under the EIC, and it does not include trademark infringement claims against non-parties to the agreement such as the Kardashians.  For one, claims between Plaintiff and the Kardashians are **not disputes between the parties** to the licensing agreement; the Kardashians are not parties to the EIC.  Furthermore, claims for trademark infringement against a third party, by their nature, do not constitute claims concerning the "validity, interpretation, termination or performance" of a trademark licensing agreement.   Thus, for two separate reasons, the language in the EIC does not cover Plaintiff's claims against the Kardashians, which are therefore non-arbitrable as a matter of law.

*Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109 (11th Cir. 2001) is directly on point.  There, the Eleventh Circuit formulated a test for determining whether a claim sufficiently "arises out of" or is "related to" an agreement to trigger an arbitration provision

contained within.  Under the Eleventh Circuit's teaching, "[d]isputes that are not related – **with at least some directness** – to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." *Id.* at 1116 (emphasis added); *see also id.* (the test may also be formulated as "whether the tort or breach in question was an **immediate, foreseeable result** of the performance of contractual duties"(emphasis added)).  Here, Plaintiff's claims against the Kardashians are plainly not related to the performance of any duties under the EIC – in fact, the EIC sets forth **no duties whatsoever** concerning the Kardashians.  Moreover, it was hardly expected – and certainly not "immediate[ly] foreseeable" – that Plaintiff's performance of duties under the EIC would lead to acts of trademark infringement by Kim, Kourtney, and Khloe Kardashian.  Thus, the unambiguous language of the EIC does not permit arbitration of Plaintiff's trademark infringement claims against the Kardashians.[6]

In the face of steadfast authority, the Kardashians rely on inapposite cases to press their untenable position.  *See* Motion at 7-8.  For example, *Olsher Metals Corp. v. Olsher*, 2003 WL 25600635 (S.D. Fla. Mar. 26, 2003) concerned a facially substantially broader arbitration clause.  There, the provision in question covered "all disputes" – not just disputes between the parties to the contract – "related in **any way** to the interpretation and performance" of the contract.  *See id.* at *5 (emphasis added).  Here, by contrast, the arbitration provision encompasses only disputes between the parties to the EIC; moreover, its  terms to do not apply

---

[6]     This conclusion makes perfect sense in light of the self-stated purpose of the EIC, which was to regulate the legal relationships between Plaintiff and Tillett and had nothing to do with the Kardashians.  EIC ¶ 1.2.

to disputes "related in any way" to the EIC.  The provision in *Olsher* is plainly broader and thus inapplicable to the case *sub judice*.[7]

By the same token, in *Mercury Telco Group, Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 570 F. Supp. 2d 1350 (S.D. Fla. 2009), the lone issue was whether an arbitration clause in a cooperation agreement covered claims **between the parties to the same agreement**.  *Id.* at 1352.  Here, however, the Kardashians were never parties to the EIC, which states that only certain disputes between the parties to the EIC should be arbitrated. Accordingly, *Mercury Telco* is off-topic and has nothing germane to say regarding the issue before the Court – *i.e.*, whether trademark infringement claims against non-parties to the EIC are subject to the EIC's arbitration provision.

In addition to *Telecom Italia*, much more on point than the Kardashains' authority is the Eleventh Circuit's recent opinion in *Gedimex, S.A. v. Nidera, Inc.*, 290 Fed. Appx. 311 (11th Cir. Aug. 22, 2008), which is not cited in their memorandum of law.  There, a purchaser of rice filed suit against its supplier, alleging breach of an oral contract to sell empty rice bags.  There were also written form contracts between the same parties for the purchase and sale of rice, and these contracts required arbitration of, "[a]ny and all disputes arising out of or under this contract or any claim regarding the interpretation or execution of this contract[.]"  *Id.* 311-12. The defendant Nidera moved to compel arbitration of the oral contract claim, but despite the "broad" arbitration clause, the Eleventh Circuit held it did not apply because, "[t]he dispute

---

[7]      Similarly, the arbitration clause at issue in *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993) did not restrict itself to claims between the parties to the agreement.  *Id.* at 755.  Moreover, and also distinguishable from the case at bar, the party seeking to compel arbitration in *Sunkist* was the parent company of one of the parties to the agreement with the arbitration clause, not a complete stranger to it like the Kardashians are in this case.  *See id.* at 757.

Nidera seeks to arbitrate is not a 'fairly direct result of the performance' of any of the duties set forth in the rice purchase contracts.'" (quoting *Telecom Italia*, 248 F.3d at 1116). Likewise, in this case, the claims against the Kardashians for trademark infringement are not a "fairly direct result" of the performance of any duties in the EIC – rather, the EIC contains no obligations of any kind bearing upon the Kardashians.

Try as they might, the Kardashians cannot demonstrate the arbitrability of Plaintiff's claims for trademark infringement. The language of the EIC limits arbitration to disputes arising between the parties to the EIC and then again, only to those disputes "concerning the validity, interpretation, termination or performance" of the agreement. But the Kardashians are not parties to the EIC, and the trademark infringement claims have nothing to do with disputes over the validity, interpretation, termination or performance of the EIC. Therefore, as a legal matter, the claims are not arbitrable, and the Kardashians request to compel arbitration of them must fail.[8]

## II. The Kardashians May Not Avail Themselves Of Equitable Estoppel

The Kardashians cannot point to language in a written agreement broad enough to encompass trademark infringement claims by Plaintiff against them, and thus their motion must be denied for failure to show the claims to be arbitrable. But even if they could, there is no

---

[8]      Indeed, taking the Kardashians' argument to its logical extreme serves to demonstrate its absurdity. If their overly-broad reading of the EIC is correct – meaning that the arbitration clause covers claims against the Kardashians for trademark infringement – then it must also be true that the Kardashians should have been able to invoke the clause in the course of Tillett's California trademark infringement action to compel arbitration of **that** proceeding in Florida as well. But the notion that Tillett could have been forced to arbitrate trademark infringement claims against the Kardashians based on a provision in an agreement with its European distributor is facially ludicrous and shows just how tenuous the Kardashians' reasoning is.

basis to compel arbitration.  The doctrine upon which the Kardashians rely is a limited, discretionary exception to the rule that only signatories to an arbitration agreement may compel arbitration, and they have wholly failed to justify how the Court could apply equitable estoppel against Plaintiff in this case.

This doctrine is one of three **limited** exceptions to the general rule that non-signatories may not compel arbitration.  *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1400 (S.D. Fla. 2014) (citing *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999)).[9]  "Equitable estoppel allows a nonsignatory to an arbitration agreement to compel or to be compelled by a signatory to arbitrate under certain circumstances in which fairness requires doing so."  *Lawson v. Life of the South Insurance Co.*, 648 F. 3d 1166, 1172  (11th Cir. 2011. "In all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness."  *Id.* (quoting *In re Humana*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd on other grounds*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003)).

Equitable estoppel applies in two situations: "(1) when a signatory's claims allege substantially interdependent and concerted misconduct by non-signatories and one or more signatories; or (2) when the claims relate directly to the contract and the signatory is relying on the contract to assert its claims against the non-signatory."  *Hmied v. Timpano Acquisition, LLC*, 2014 WL 1293362, *7 (M.D. Fla. Mar. 28, 2014) (internal quotation marks and citations omitted).

---

[9]     The other two exceptions (which the Kardashians do not cite and also have no application here) are the agency/related principles and third-party beneficiary exceptions. *Gunson*, 43 F. Supp. 3d at 1400.

While the Kardashians wholly rely on the second category of equitable estoppel, their discussion of the doctrine omits two critical points.  First, courts use equitable estoppel to force arbitration **in their discretion**.  *See Corp. Am. Credit Union v. Herbst*, 397 Fed. Appx. 540, 542 (11th Cir. 2010) ("the court did not abuse its discretion in declining to compel arbitration under the doctrine of equitable estoppel"); *see also Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) ("whether to utilize equitable estoppel [to compel arbitration with a non-signatory] is within the district court's discretion").

In addition, as the Eleventh Circuit stated recently, for the claims to "relate directly" to the contract containing  the arbitration clause such that the second type of equitable estoppel may apply, there must be more than a "but-for" relationship between the contract and the claims sought to be arbitrated.  *See Lawson*, 648 F. 3d at 1173-74.  That is to say, it is not enough that the claims "make reference to" or "presume the existence of" the agreement with the arbitration clause; rather, for equitable estoppel to apply, the agreement itself must constitute the "legal basis" for the claims, and the dispute must arise from the agreement itself, *i.e.*, from obligations in the agreement.  *See id.* at 1172-73; *see also Hmied*, 2014 WL 1293362, *7 (denying motion to compel arbitration based on equitable estoppel where the plaintiff's "claims for violations of the FLSA and the Florida Constitution are completely independent from any contractual obligations arising under the arbitration agreements").

Here, the Kardashians have entirely failed to show that compelling arbitration under an equitable estoppel theory would be an appropriate exercise of the Court's discretion.  Their argument is that Plaintiff should be equitably estopped from avoiding arbitration because the Complaint refers to the EIC and that without the EIC, Plaintiff would lack standing to pursue the Kardashians for trademark infringement.  *See* Motion at 8-11.  But this is tantamount to

14

stating that arbitration should be compelled because the claims make reference to and presume the existence of the EIC – exactly what the Eleventh Circuit held to be **insufficient** for purposes of applying equitable estoppel. *See Lawson*, 648 F. 3d at 1172-73. Indeed, the Kardashians have not – and cannot – identify any **obligations** in the EIC upon which the trademark claims against them are based. The EIC – an agreement between Plaintiff and Tillett – has nothing whatsoever to do with the Kardashians, and contains no such obligations and therefore cannot be a basis for equitable estoppel under clear and established law. *See id.*; *Hmied*, 2014 WL 1293362, *7.

  As with their discussion of arbitrability, the Kardashians' discussion of the case law on equitable estoppel is sorely deficient. In *Gunson*, the plaintiff entered into payday loan agreements with payday lenders containing "sweeping arbitration clauses";[10] she sued several banks that originated the loans but were not parties to the agreements on various theories including violations of RICO, the Florida Usury Law, the Florida Deferred Presentment Act, and the Florida Deceptive and Unfair Trade Practices Act. *See Gunson*, 43 F. Supp. 3d at 1397-99. Relying on equitable estoppel, the Southern District of Florida compelled arbitration finding that in order to prove her claims against the banks, the plaintiff needed to "demonstrate the existence of an unlawful debt," *i.e.*, that the loan agreements containing the arbitration clause were illegal. *See id.* at 1401-02. As the district court put it, "[h]ere, there is more than a 'but-for' relationship between the Loan Agreements and Gunson's claims. Gunson's claims rely upon and are necessarily related to the Loan Agreements." *Id.* at 1402 ("Indeed, the Loan

---

[10] The arbitration clauses were far broader than the one at issue here in that they required arbitration of, *inter alia*, "any" or "all" disputes related to the loan agreements. *See id.* at 1398. As such, *Gunson* is also distinguishable because before even getting to the equitable estoppel analysis, the claims there were arbitrable while the claims here are not.

Agreements are the documents that create the relationship between the lenders and the Defendants. The Loan Agreements contain the purportedly illegal terms and authorized the ACH transaction that the Defendants should supposedly not have processed.").

In stark contrast, the EIC creates **no relationship** between Plaintiff and the Kardashians.  To prove its trademark claims against the Kardashians, Plaintiff need not prove that the EIC is illegal – in fact, **there are no disputed issues arising from the EIC** that relate to the elements of these claims.   *Gunson* is thus readily distinguishable.  *Lawson* controls and precludes application of equitable estoppel against Plaintiff.

*MS Dealer* is also readily distinguishable.  There, the plaintiff auto buyer brought suit against an auto dealership and service corporation, alleging that they charged an excessive amount for a service contract.  *See Ms Dealer*, 177 F.3d at 944-45.  The service corporation moved to compel arbitration based on an arbitration provision in the plaintiff's contract with the dealership.  *See id.* at 945.  The Eleventh Circuit applied equitable estoppel based on: (1) the fact that the plaintiff's claims against the service corporation "depend[] entirely upon her contractual obligation to pay $990.00 for the service contract; and (2) the claims against the service corporation "are based on the same facts and are inherently inseparable" from the claims against the dealership.  *Id.* at 947-48.  Here, in sharp distinction, there is no obligation in the EIC upon which Plainiff's claims versus the Kardashians depend, and the claims against the Kardashians are based on completely different facts from those underlying the breach of contract claim against Tillett.

Finally, both *Physician Consortium Services, LLC v. Molina Healthcare, Inc.*, 414 Fed. App'x 240 (11th Cir. 2011) and *Sunkist*, 10 F.3d 753, involved situations where the plaintiff sued a company based on a breach of contract by the company's subsidiary; the operative

contract contained an arbitration clauses, and the parent company successfully compelled arbitration even though it was not a party to the operative contract.  *See Physician Consortium*, 414 Fed. Appx. at 242; *Sunkist*, 10 F.3d ay 757-58.  That is a far cry from this matter, where the Kardashians  have no connection to the parties to the EIC, and Plaintiff's claims against the Kardashians have no relation to any obligations under the EIC.

For all of these reasons, arbitration may not be compelled on the basis of equitable estoppel.

### III.     The Kardashians Waived Any Right To Compel Arbitration

Even if the Kardashians had a viable right to compel arbitration (which they do not), they have waived their right to do so based on their conduct in the litigation.

"Although arbitration agreements governed by the FAA are to be liberally enforced, . . . courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so."  *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011) (citations omitted).  "To determine whether a party has waived its contractual right to arbitrate, courts apply a two-part test:  First, they decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, they look to see whether, by doing so, that party has in some way prejudiced the other party."  *Id.* (internal quotation marks and textual alterations omitted).  Both prongs are met in this case.

First, the Kardashians have taken part in multiple activities inconsistent with arbitration. On February 13, 2015, they participated in a case management conference that resulted in the joint filing of a CMR [D.E. 44]  answering "no" to the question of whether the parties would agree to an arbitration.  CMR at pp 8-9.  This representation is directly contrary to any right to arbitrate.   Moreover, it took nearly eight months from the filing of the Complaint for the

Kardashians to request arbitration – not only did the Kardashians seek adjudication from this Court through its motion to dismiss for lack of subject matter jurisdiction [D.E. 33], but they propounded written discovery, participated in the case management conference, and agreed to mediate this case on November 10, 2015 in Orlando. *See* Composite Ex. 2; Notice of Mediation [D.E. 51]. Based on the length of delay before demanding arbitration and their substantial participation in the litigation, the Kardashians have plainly acted inconsistently with any arbitration right. *See Snelling & Snelling, Inc. v. Reynolds*, 140 F. Supp. 2d 1314, 1322 (M.D. Fla. 2001) (defendant acted inconsistently with arbitration right by delaying 14 months from service of the complaint, answering the complaint, participating in the case management conference, and propounding discovery).[11]

Second, Plaintiff has been prejudiced as a result. To wit, Plaintiff has incurred significant cost in having to respond to the Kardashians' motion to dismiss as well as undertake the various litigation activities associated with the case management conference, case management report, discovery, and mediation coordination. Further, as a consequence of the Kardashians' failure to move for arbitration for some eight months, Plaintiff's ability to obtain relief on its claims has been significantly delayed. *See Snelling & Snelling*, 140 F. Supp. 2d at

---

[11]     The Kardashians claim they "filed this motion as soon as practicable after learning about the Arbitration Clause in License Agreement" because they did not learn of the arbitration clause's existence until May 7, 2015, when Tillett's counsel provided them a copy of the EIC. Motion at 11-12. But even if it is true that the Kardashians could not have known of the arbitration clause until they obtained the EIC, their claim is false. On March 20, 2015, Plaintiff provided a copy of the EIC to the Kardashians with their Initial Rule 26(a) Disclosures. *See* **Exhibit 1** at pp. 34-49. Thus, they could not have filed the motion to compel "as soon as practicable" after learning about the arbitration clause, because they received the EIC **at least** 54 days prior to filing the motion. Their misrepresentation is plainly calculated at attempting to minimize the "waiver" problem. As discussed further below, the lack of candor constitutes an additional reason to reject the equitable estoppel argument.

1322 ("to determine whether the other party has been prejudiced, the court may consider the length of delay in demanding arbitration and the expense incurred by the opposing party"); *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (prejudice where opposing party waited eight months from the time complaint was filed to demand arbitration and availed itself of litigation process).

For these reasons, the Kardashians have waived any right to compel arbitration.

### IV.   The Kardashians Should Not Be Afforded Equitable Relief Because They Have Unclean Heands

Finally, the Kardashians have unclean hands and for that reason, should not be afforded the equitable relief they are seeking, even if they were entitled to it.

The "unclean hands doctrine" is a bar to equitable relief under Florida law. *Hensel v. Aurillo*, 417 So. 2d 1035, 1038 (Fla. 4th DCA 1982).   "Equity will stay its hand where a party is guilty of conduct condemned by honest and reasonable men.  Unscrupulous practices, overreaching, concealment, trickery or other unconscientious conduct are sufficient to bar relief." *Id.* (citation and internal quotations omitted).

Here, in an apparent attempt to bolster their motion to compel by minimizing their waiver problem, the Kardashians have made misrepresentations.  Both the motion and the accompanying Kump Declaration indicate that the arbitration provision was not made known to the Kardashians until May 7, 2015, when Tillett's counsel provided the EIC to Kump upon giving notice that Tillett would be moving to compel. *See* Motion at 12; Kump Decl. ¶ 2.  But this is patently false: **on March 20, 2015**, Plaintiff's counsel produced the EIC to all Defendants with their Initial Rule 26(a) Disclosures. **Exhibit 1** at pp. 34-49.  Thus, the

Kardashians had the EIC in their possession for at least 54 days prior to receiving it from Tillett's counsel.

Moreover, the Kump Declaration testifies that, "[a]s of May 7, 2015, no documents had been produced in discovery in this action."   Kump Decl. ¶ 6.  This is also untrue.  As noted, Plaintiff produced a number of documents with its March 20, 2015 initial disclosures, including the EIC.

Since the relief they seek is equitable in nature, it requires that the Kardashians come with clean hands.   As a result of the misrepresentations, they have unclean hands, and the Court should deny the motion.  *See Texas Enters., Inc. v. Arnold Oil Co.*, 59 S.W.3d 244, 249-50 (Tex. App. 2001) (motion to compel arbitration based on equitable estoppel denied due to defendant's unclean hands).

<u>Conclusion</u>

For all of the reasons discussed, the Court should deny Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian's Motion to Compel Arbitration and Stay Action as to Counts III, IV and V of the Complaint.

RESPECTFULLY SUBMITTED,

_/s/ Jared H. Beck_____

By: Jared H. Beck
**BECK & LEE TRIAL LAWYERS**
JARED H. BECK
Florida Bar No. 20695
ELIZABETH LEE BECK
Florida Bar No. 20697
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:     (305) 234-2060
Facsimile:     (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com
*Trial Counsel for Plaintiff*

_/s/ Nolan K. Klein_____

By:  Nolan K. Klein
**LAW OFFICES OF NOLAN KLEIN, P.A.**
NOLAN K. KLEIN
klein@nklegal.com
Florida Bar No. 647977
Wells Fargo Tower – Suite 1500
One East Broward Boulevard
Fort Lauderdale, Florida 33301
Telephone:     (954) 745-0588
*Co-Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that a copy of the foregoing instrument was e-filed with the Clerk of

the Court using CM/ECF, this **1**st day of **June,** 2015.

By:   _/s/ Nolan K. Klein_____

NOLAN K. KLEIN