**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

KROMA MAKEUP EU, LLC,

    Plaintiff,

v.                                                  Case No: 6:14-cv-1551-Orl-40GJK

BOLDFACE LICENSING +
BRANDING, INC., et al.,

    Defendants.

## ORDER

This cause comes before the Court on the following:

1. Defendant, By Lee Tillett, Inc.'s Motion to Compel Arbitration and Stay Action as to Count VI of the Complaint and Incorporated Memorandum of Law (Doc. 55), filed May 12, 2015;

2. Defendants Kim Kardashian, Kourtney Kardashian and Khloe Kardashian's Motion to Compel Arbitration and Stay Action as to Counts III, IV and V of the Complaint and Memorandum of Law (Doc. 56), filed May 13, 2015;

3. Plaintiff Kroma Makeup EU, LLC's Response in Opposition to Kardashian Defendants' Motion to Compel Arbitration and Stay Action as to Counts III, IV, and V of the Complaint (Doc. 59), filed June 1, 2015;

4. Plaintiff Kroma EU, LLC's Response in Opposition to Defendant, By Lee Tillett, Inc.'s Motion to Compel Arbitration as to Count VI of the Complaint (Doc. 63), filed June 8, 2015;

5. Defendants' Kim Kardashian, Kourtney Kardashian and Khloe Kardashian's Reply in Support of Their Motion to Compel Arbitration as to Counts III, IV

1

and V of the Complaint and Memorandum of Law (Doc. 66), filed June 17, 2015; and

6. Defendant By Lee Tillett, Inc.'s Reply to Plaintiff Kroma Makeup EU, LLC's Response in Opposition to Defendant, By Lee Tillett, Inc.'s Motion to Compel Arbitration as to Count VI of the Complaint (Doc. 67), filed June 25, 2015.

## I. BACKGROUND

This dispute arises out of Plaintiff's, Kroma Makeup EU, LLC ("Kroma EU"), rights in the U.S. trademark "Kroma," which is registered to Defendant, By Lee Tillett, Inc. ("Tillett"). In October 2012, Tillett granted Kroma EU an exclusive license to use the "Kroma" mark to import, sell, and distribute Tillett's makeup line in Europe. One month later, Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian (the "Kardashian Defendants"), with the help of Defendant, Boldface Licensing + Branding, Inc. ("Boldface"), released their own makeup brand named "Khroma." With questions arising about whether the "Khroma" name infringed upon the "Kroma" mark, Tillett, the Kardashian Defendants, and Boldface sued each other in a California federal court. The parties ultimately settled their dispute and the lawsuit was dismissed with prejudice.

In September 2014, Kroma EU initiated the instant action against Tillett, the Kardashian Defendants, and Boldface. Kroma EU claims that the Kardashian Defendants and Boldface infringed upon Kroma EU's rights in the "Kroma" mark by launching the "Khroma" brand in Europe and that Tillett breached a contractual obligation to share in the settlement of the California case. Tillett and the Kardashian Defendants filed motions to dismiss Kroma EU's Complaint, which were denied by the Court on April 15, 2015. To

date, Boldface has failed to appear in this action and, as a result, a clerk's default was entered against it on February 5, 2015.

Tillett and the Kardashian Defendants now move to compel the arbitration of Kroma EU's claims against them. Tillett asserts that Kroma EU's breach of contract claim arises out of an Exclusive Import Contract (the "Import Contract"), which contains a binding arbitration provision. Although the Kardashian Defendants are not parties to the Import Contract, they also assert that Kroma EU's trademark infringement claims against them are subject to arbitration based on the doctrine of equitable estoppel.

## II.     STANDARD OF REVIEW

It is well-established that parties may contract to settle potential disputes by arbitration and that such agreements are favored by law. *Vaden v. Discovery Bank*, 556 U.S. 49, 58 (2009); 9 U.S.C. § 2. As a corollary, "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). When a court finds a valid and enforceable arbitration clause binding among the parties, the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because the right to arbitrate must be liberally enforced, any doubt about whether a dispute is arbitrable should be resolved in favor of arbitration. *AT&T Techs.*, 475 U.S. at 650.

## III.    DISCUSSION

### A.     Kroma EU Must Arbitrate its Breach of Contract Claim Against Tillett

Tillett asserts that Kroma EU should be compelled to arbitrate its breach of contract claim because the Import Contract between them requires the arbitration of any dispute

3

"arising from the validity, interpretation, termination or performance" of their contractual obligations.  (Import Contract § 16.4).  Kroma EU does not dispute that the Import Contract's arbitration clause is valid and governs the type of claim it brings against Tillett. Rather, Kroma EU contends that Tillett has waived its right to arbitration by waiting so long to assert its arbitration right and significantly engaging in the instant litigation to Kroma EU's detriment.  (Doc. 55, pp. 5–9).

Like any contractual provision, a party may waive an otherwise valid and enforceable right to arbitrate a dispute.  *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002).  A party waives its right to arbitrate when the party (1) acts inconsistently with its arbitration right, and (2) prejudices the opposing party by doing so. *Id.* at 1315–16; *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011). "[T]he party who argues waiver bears a heavy burden of proof under this two-part test." *Krinsk*, 654 F.3d at 1200 n.17.

The Court finds that Kroma EU cannot satisfy its heavy burden of showing that Tillett has acted inconsistently with its arbitration right.  A party acts inconsistently with a right to arbitrate when it "[s]ubstantially invok[es] the litigation machinery prior to demanding arbitration."  *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991).  While the Court must look to the totality of the circumstances of each particular case, a party is generally considered to have substantially invoked the litigation machinery when it litigates numerous motions, engages in voluminous discovery, or otherwise aggressively defends its interests.  *See, e.g., id.* at 1514 (holding that a party substantially engaged in litigation by litigating two motions and conducting five depositions); *Garcia v. Wachovia Corp.*, 699 F.3d 1273,

1277–78 (11th Cir. 2012) (holding that a party substantially engaged in litigation by taking several depositions, serving answers to interrogatories, and producing more than 900,000 documents over a one year period); *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (holding that a party substantially engaged in litigation by vigorously defending its interests in a prior lawsuit without ever asserting its right to arbitrate), *cert. denied*, 516 U.S. 1114 (1996). The filing of a motion to dismiss to test the sufficiency of a complaint is usually not enough, on its own, to constitute substantial litigation. *See Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222–23 (S.D. Fla. 2010).

Here, Kroma EU posits that Tillett has substantially engaged in litigation by filing a Rule 12(b)(6) motion to dismiss, answering the Complaint, marking "no" in the parties' jointly submitted Case Management Report to the question of whether this case should be submitted to arbitration, and otherwise waiting eight months to move to compel arbitration. (Doc. 55, p. 8). However, the Court disagrees that this conduct amounts to *substantial* litigation activity. The only true litigation Tillett has engaged in so far is the filing of a motion to dismiss. At the time Tillett moved to compel arbitration, neither Tillett nor Kroma EU had propounded any discovery. Tillett's indication in the Case Management Report that this matter is not ripe for arbitration, although inconsistent with its assertion of the right, is also not substantial activity, especially considering that the Case Management Report is a document that the Court required the parties to file and was completed prior to the Court ruling on Tillett's motion to dismiss. Further, Tillett asserted arbitration as an affirmative defense and moved to compel arbitration soon after the Court denied its motion dismiss, indicating that Tillett did not intend to waive its right.

Because the filing of a motion to dismiss is not enough on its own to amount to substantial litigation activity, see *Dockeray*, 724 F. Supp. 2d at 1222–23, the Court finds that Tillett has not waived its right to arbitrate. Kroma EU will therefore proceed to arbitration on its breach of contract claim against Tillett.

> B.  **Equitable Estoppel Does Not Apply to Compel the Arbitration of Kroma EU's Trademark Claims Against the Kardashian Defendants**

Although the Kardashian Defendants are not parties to the Import Contract, they move to compel arbitration of Kroma EU's trademark claims under the Import Contract's arbitration clause based on the doctrine of equitable estoppel. The right of a non-signatory to a contract, such as the Kardashian Defendants, to compel a signatory to arbitration under the doctrine of equitable estoppel is a question of state contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Florida law allows a non-signatory to compel arbitration when the signatory's claim against the non-signatory "presume[s] the existence" of the contract at issue. *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242 (11th Cir. 2011) (per curiam). In this way, equitable estoppel acts to prevent the signatory from unfairly "using certain provisions of the contract to [its] benefit to help establish [its] claim while also attempting to avoid the burdens of the other provisions." *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014).

A signatory presumes the existence of a contract when the signatory's claim "arises out of and relates directly to" the contract. *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993), *cert. denied*, 513 U.S. 869 (1994). Stated differently, a non-signatory may avail itself of equitable estoppel when the

6

signatory's claim "occurs as a fairly direct result of the performance of contractual duties." *Bailey v. ERG Enters., LP.*, 705 F.3d 1311, 1317 (11th Cir. 2013).

However, when the signatory merely cites the existence of the contract because it is factually significant to its case, the signatory's claim against the non-signatory cannot be said to arise out of or presume the existence of the contract. For example, in *Lawson v. Life of the South Insurance Co.*, the Lawsons entered into a loan agreement with Chase Manhattan Bank which was subject to arbitration. 648 F.3d 1166, 1168 (11th Cir. 2011). At the same time, the Lawsons executed a separate life insurance policy with Life of the South Insurance Co., which did not contain an arbitration clause. *Id.* at 1168–69. In the policy, Life of the South agreed to pay the remaining balance of the Lawsons' loan with Chase were they to die during the term of the loan. *Id.* at 1169. The policy further provided that, if the Lawsons paid off the loan early, Life of the South would disburse any unearned premium on the life insurance policy. *Id.* The Lawsons ultimately did pay off the loan early and sued Life of the South to recover the remaining unearned premium under the life insurance policy. *Id.* In the district court, Life of the South moved to compel arbitration according to the Lawsons' loan agreement with Chase, despite the fact that Life of the South was not a signatory to that contract. *Id.* at 1170. The district court denied Life of the South's motion, finding, in part, that equitable estoppel did not apply. *Id.*

In reviewing the district court's decision, the Eleventh Circuit agreed that the Lawsons' claims against Life of the South could not be arbitrated under equitable estoppel because they did not arise out of the loan agreement with Chase. *Id.* at 1173. Instead, the Lawsons' reference to the loan agreement was only important to explain the factual

background of their claims against Life of the South. *Id.* Because there was no legal dispute between the Lawsons and Life of the South regarding any duty or obligation required by the loan agreement with Chase, equitable estoppel could not be used to compel the Lawsons to arbitration. *Id. See also Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) (observing the distinction in the case law that equitable estoppel can apply to compel arbitration where the dispute revolves around performance of duties and obligations in the contract, but not where the contract is relied on merely for its factual significance).

In this case, the basis of Kroma EU's trademark claims against the Kardashian Defendants does not arise out of or occur as a fairly direct result of the performance of any duty or obligation in the Import Contract. The Import Contract governs Kroma EU's business relationship with Tillett, covering topics such as ordering, paying for, advertising, and packaging Tillett's makeup line. The Import Contract also grants Kroma EU an exclusive license to import and sell Kroma products in Europe and outlines Kroma EU's and Tillett's obligations to each other relative to that license. On the other hand, the thrust of Kroma EU's Complaint against the Kardashian Defendants is that they infringed on the "Kroma" mark by launching the "Khroma" brand in Europe. Much like the Lawsons, Kroma EU makes numerous references to the Import Contract in its claims against the Kardashian Defendants because it serves as an important factual backdrop to Kroma EU's lawsuit; the Import Contract establishes that Kroma EU in fact holds rights to the trademark which it alleges the Kardashian Defendants infringed. Because Kroma EU's claims against the Kardashian Defendants do not involve a legal dispute about the performance of any duty or obligation under the Import Contract, the

Kardashian Defendants cannot invoke the doctrine of equitable estoppel to compel arbitration.

IV. **CONCLUSION**

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant, By Lee Tillett, Inc.'s Motion to Compel Arbitration and Stay Action as to Count VI of the Complaint (Doc. 55) is **GRANTED**. Kroma Makeup EU, LLC and By Lee Tillett, Inc. shall proceed to arbitration on Count VI of the Complaint in accordance with the terms of their arbitration agreement. Count VI is **STAYED** pending arbitration. The Court retains jurisdiction over Count VI of the Complaint for any post-arbitration motions the parties may make. Kroma Makeup EU, LLC and By Lee Tillett, Inc. are **DIRECTED** to file a joint status report advising the Court on the status of arbitration, which shall be filed with this Court on January 8, 2016 and every sixty (60) days thereafter until the arbitration proceedings have concluded.

2. Defendants Kim Kardashian, Kourtney Kardashian and Khloe Kardashian's Motion to Compel Arbitration and Stay Action as to Counts III, IV and V of the Complaint (Doc. 56) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on November 9, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties